Number 171851, Jose Suero-Algarin v. Hima San Pablo Caguas. Ms. Rodriguez, good morning. Good morning, Your Honors. Hedy Rodriguez for the appellant, Centro Medico del Turabo, Inc., also known as Hima San Pablo. May it please the Court, I would ask for leave to reserve three minutes for rebuttal after presentation by all the other parties. Your way. Thank you. Your Honors, supervision at, let me just say, I'm going to jump right into the June 2019 order because this is the second time. This is a very limited argument. Yes, I will do just that. Supervision of excessive jury verdicts by the district court through a remititor does not offend the Seventh Amendment reexamination clause. The question before this Court is if the district court, when sitting in diversity jurisdiction, should have compared against the federal standard or the framework provided by the Puerto Rico Supreme Court. In 2005, in Marcano-Rivera, this Court stated that whether the inquiry adopted by the Puerto Rico Supreme Court required a more rigorous standard of review, constituting a departure from the federal standard for judging excessiveness, was a close call. Now, 15 years later, the Puerto Rico Supreme Court has clarified any ambiguity. This issue, in our opinion, is no longer a close call. In our opinion, it is clear that the Puerto Rico Supreme Court requires a rigorousness that is tantamount to a substantive rule of law that must be applied in this case. First, we find that in the Herrera opinion by the Puerto Rico Supreme Court in 2010, the Puerto Rico Supreme Court described the excessively high standard as a material deviation from previous similar cases from said court, thus showing that the standard does not require the verdict to be so grossly excessive as to shock the conscience to be unacceptable by Puerto Rico standards. And the truth of the matter is that the New York statute in the Gasparini opinion by the U.S. Supreme Court was looking at a standard where excessiveness was reviewed as a material deviation from the reasonable amount. Counsel, why isn't Fresenius most fairly read as the ultimate standard hasn't changed at all? It's simply suggesting to the lower courts a methodology that it can use in applying that standard. Why isn't that the most fair reading of Fresenius? So that really there's been no change in the substance of law. Again, it's just a recommendation as to how the lower court should go about deciding whether an award is ridiculously low or exaggeratedly high. The standard has not changed at all. Well, Your Honor, we believe that the standard has changed, not dramatically, but it has changed and it has been restated. Where is the language in Fresenius that changes the standard? I'm sorry, in answering that, the court of Fresenius specifically said we reaffirm Rodriguez. I'll go first to Plaintiff's argument that the language referring to reaffirming signals that it's not a new standard and then back to the question, right? So the Puerto Rico Supreme Court issues opinions when it is establishing a new rule or clarifying one that has been misapplied, misinterpreted, or misused. If there's nothing new when the Puerto Rico Supreme Court decides on a case, if there's nothing new to be said, it does not publish an opinion. So the fact that they publish both Fresenius and the Herrera, because our position is that it's both cases that are relevant to this inquiry. When it decided to publish those opinions, it signaled that there was something that was being clarified or that was being changed. And between Herrera and Fresenius, there was one main change where the court looked at the different methodologies for bringing the cases to the present value proposed by Professor Murga versus Professor Gonzalez. And in Fresenius, they decided to use one over the other. Well, sure, so... So going back to... Yes. Please. Our position is that the combination of the Herrera opinion and the Fresenius opinions shows that this is a methodology that is substantive in nature. The way that it works, it has a four-step process, if I may just walk through it quickly. The first process is for the court to identify prior similar cases from the board of... Well, Counsel, excuse me, I don't mean to interrupt, but I think we do understand what the decision says. And it seems to me in a system where you have judges only making these kind of awards, and judges, unlike juries in the federal system, sort of have to explain themselves, that Fresenius very helpfully gives the trial judges a methodology that it can use in explaining the decisions it reaches in reviewing. But the methodology explaining Herrera and then in Fresenius is not a recommendation. It is an instruction to the courts that that's the way that the awards, that the damages have to be measured. So there's a process. The first process is... I'm sorry, but in most tort cases, I mean, wouldn't things be brought to present-day value anyway through an expert? Is the Puerto Rico Supreme Court saying anything other than the obvious? In the industry, there was controversy among different known experts, and in the Fresenius case, the Puerto Rico Supreme Court did issue their ruling on which one was the prevailing one. So there is an expression from the Puerto Rico Supreme Court interpreting Article 1802 to which would be the correct method for bringing the award to the present-day value that is tied to the Puerto Rico economic markers, which shows also that it's substantive in nature and not just procedural. So going back to how it distances itself, our argument is that first it distances itself because grossly excessive so as to shock the conscious is a much more vague standard than what the court adopted in Herrera and Fresenius. And the court adopted a methodology in Herrera and Fresenius which is very similar to the one in the New York statute that was before the U.S. Supreme Court in Gasparini. In Herrera, the court clearly said, you first pick, if I may finish this answer, you first pick the similar cases, then you bring that to your present-day value that constitutes what is prima facie reasonable, and then you adjust for the particular cases, the particular facts in that case. That's a very specific methodology, that's not a suggestion that has to be done for each plaintiff in state court, which is not being done in federal court. And our position is that it's very different from a generally vague, grossly excessive so as to shock the conscious. In state court, if it deviates materially from what is the reasonable... Your time is taken from your other time. Yes, Your Honor, thank you. May it please the court, Pedro Soler for Apolis. In this case, contrary to stated by CMT-EMA, Fresenius did not change anything. Fresenius only affirmed the longstanding standard of evaluating awards for damages. What Fresenius did was to provide appellate judges with an additional tool to evaluate whether the awards provided by the first instance courts have been correct or not upon the standard of exaggeratedly high or ridiculously low, but at no point in time did that standard change. It just provided a useful starting point and reference for passing judgment upon the concession granted by the primary forum, and that's exactly how the Fresenius opinion reads. Second, Fresenius is purely procedural. The Fresenius opinion states it has provided a methodology, and if you look at methodologies synonym to procedural, nothing is substantive in Fresenius. Further, Fresenius, if we evaluate Fresenius upon the outcome determinative test, it would not change or affect the outcome of the case. I mean, if you try to evaluate the damages or awards, that would not change the ultimate award of the case. The ARPIN case, ARPIN v. U.S., has stated that to compare cases in determining the amount of damages, it would not change the ultimate award of the case. So to compare cases in determining the amount of damages to award in a particular case is a matter of purely procedural law. So Fresenius is not procedural. But let's assume, in arguendo, that the matter is substantive. What would happen then? We must apply then Erie v. Tompkins. And what's going to be the practical impact of that in cases? Let's say a plaintiff takes a case into federal court, and then he wins the case, jury awards a verdict. But plaintiff thinks that the award is ridiculously low. Well, what happens then? No trial, because the federal court does not allow additors. It only allows remittors, where the Fresenius court actually was an additor. In the Fresenius court, the Supreme Court of Puerto Rico almost tripled the amount of damages provided by the first instance court. And then what's going to happen? It's going to create, first of all, a huge constitutional issue, because you could not provide the entire remedy. You're only providing half of the remedy that the Fresenius court provided for. You couldn't provide additors. Then the practical aspect of it is that, okay, so if I get an award that's ridiculously low, my only remedy is for a new trial. That's the same in Gasparini, though, right? No, no, it's not the same. They had remittor in the state court in Gasparini, but the court didn't touch upon any constitutional concerns by the fact that we don't permit it in federal court. But my issue here is that there are no additors. I know there are remittors in federal court, but they cannot provide additors. I'm sorry, I meant additors. There were additors in Gasparini. I do not believe so. I may be incorrect, but I do not believe that in the federal system you can provide an additor. Right, but I'm saying in Gasparini, the state law that was under review there did provide for additors. Even though we can't do it in the federal court, the Gasparini court didn't signal any constitutional problems in that difference. Well, but that was codified law by the New York legislator. And in Puerto Rico, that has not passed by the Puerto Rico legislator. So how can you provide a remedy? I mean, in New York, the statute was provided in 1986 by a tort reform legislation due to punitive damages. We don't have punitive damages in Puerto Rico. Puerto Rico, they have seen at least three occasions in which they have tried to pass tort reform here in Puerto Rico, and they have not passed. The Supreme Court of Puerto Rico cannot pass legislation, of course. They can only interpret laws that have been issued by the Puerto Rico legislator. So, but back to my practical issue. If I can only get a new trial, and let's say in the second new trial, after spending $60,000, $70,000, $80,000 worth in experts in bringing down the witnesses in presenting evidence, and spending on the court's resources, so then on the second trial I come again and I get another ridiculously low verdict. No trial again. And the circle will go on and on and on because that by that they cannot provide an entire, they cannot provide the entire resource of saying, okay, whether I can get a remediator or I can get an editor. I just want to show the court what the practical importance of trying to apply Fresenius in federal court will imply besides the constitutional issue. That's not only, that's not the only possible constitutional issue, right? I mean, there is, if that methodology is applied in federal court, it involves a reexamination of the jury award in a way that may also be described. Which also is in contradiction with the Seventh Amendment, correct? Correct. So our position, your honors, is that in this case the Fresenius or the other case that the counsel mentioned changed a thing. They just provided a methodology. They just provided a procedural and it's purely procedural tools that it's an instruction for first instance judges to aid the appellate court in reviewing whether the awards provided have been correct or not. That is our position. If there are any other questions, feel free to answer. Thank you. Martinez. Yes, good morning, your honor. I represent the Puerto Rico Hospital Association. I would briefly like to take up the question regarding the excessiveness in light of Judge Gasparini's decision. And this court's concern that it could be an intrusion on the jury. Taking into account that the excessiveness is an issue of law as has been determined by Gasparini. Whether that issue has been surpassed is a question of Puerto Rico law. And the fact addressing the court's concern that Puerto Rico trial courts are directed by judges rather than jurors doesn't make a difference in that ultimate determination. Because that ultimate determination is made by the Puerto Rico Supreme Court in light of the policies that it wants to make sure that damages awards do not become an industry and that there will be some controls. And that has been consistent throughout. But in the more recent cases where the court has polished that standard, in fact the language that it has been using, and it's not in Fresenos. The language comes from Herrera, which is the 2012 case. The court there said that it would review if it manifestly deviates from previous cases of the court, of the Puerto Rico Supreme Court. So that's where that change, or that clarification, because it's already a change. The court has always looked to its own cases. And in that case it made clear that if it manifestly deviates from its prior cases, then it's going to be ridiculously low, I'm sorry, or high. And then in Fresenos it has a mandate for both levels, one for the trial court and one for the appellate courts. The appellate courts review for excessiveness, looking at the Supreme Court cases, and then the initial procedure established for the trial courts is applied in the trial courts. Not doing that in the fraud cases presents a problem that you get very different, very different results on the same substantive law. And that is not permitted either by Erie nor Gasparin. Thank you. Mr. San Juan, good morning. Good morning, Your Honors. May it please the Court, Manuel San Juan on behalf of the Association of Victims of Medical Malpractice. Your Honors, in our view, this is an easy issue for the Court. It's simple. It's already been decided by this Court in past cases. And Fresenos has changed nothing, nothing, nor Fresenos, nor Herrera, nor any of the other cases that have been cited by the appellant have changed the law. The law is simple. Each case is unique. Each case must be seen on its own merits, and other cases that are similar should be looked at, but they do not constitute mandatory precedent. So there's no mandate by the Supreme Court that says you must decide cases, award damages based on what other cases have said. Each case is unique, and that is why each case should be judged on its own particular merits. In the federal court, the juries will award damages that may or may not be different from what a judge may award. The only difference is that a judge has to articulate how the judge reaches that decision. A jury doesn't have to do that. But there's no substantive difference here between what happens in federal court and what happens in the state courts. Therefore, there's no issue with Erie v. Tompkins or with Gasparini. Your Honors, this is an easy issue for the court to decide. If you have any questions, I'm happy to answer them. Otherwise, I will sit down, and I wish you safe travels back to your place of origin. I'm not going far. Except for you, Judge. Thank you. Thank you, Your Honor. Mr. Hestrous, good morning. Yes, sir, good morning. As stated in the amicus purifia, we represent Puerto Rico Medical Defense Insurance Company, which is a local company engaged in the rendering of insurance policies to physicians, initially as excess insurers and subsequently as primary insurers. We come to the court in response to the invitation that was extended by the June 2019 order. Respective arguments of the parties that have presented, me and Amici, have addressed various points that have been briefed more than adequately. In response to the court's questions, however, it is our position that for the purposes of deciding the issue, there is not much difference between the New York statute and the presentation of the New York statute. I would state quickly that a legal methodology for determining awards is not the same as judicial procedure. The methodology will be applied at different times and different procedures. In other words, Gasparini said you take the substantive law, not the procedural law. You harmonize both. That's what needs to be done here. The court in Gasparini also stated that what is the maximum allowable award is a matter of law and not of fact. So the re-examination of the jury award under the Seventh Amendment in a state case, Gasparini decided that that was no problem and that it did not represent an offense to the Seventh Amendment. And here I would like to stress that the outcome of the case would have been changed. If the district court had done the comparative analysis required by the Puerto Rico Supreme Court, a reasonable amount that is a matter of law would have been found to be close to $50,000. That is evidence that the outcome would have changed and that goes to what ERIE is warning us not to promote form shopping and an inequitable application of justice. Plaintiff here in state court would have received somewhere around that amount. Plaintiff in federal court received $400,000. The Puerto Rico court has mandated that the uniqueness of each case is the last step in that methodology which appellate courts may review for abuse of discretion if it deviates materially from the reasonable amount as defined by the court so as to be excessively high. So that uniqueness is the second step of the adjustment that's explained in the Herrera opinion. Finally, I would like to say that the fact that the Fresenius court said that it was reaffirming doesn't mean that it's superfluous. The restatement is the governing law that has to be applied in this case. Thank you. Now, Your Honor, we are done. Thank you very much. This session of the honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court.